UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| BIANCA FARRELL | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-2030 (JCH) |
| v. | : | |
| | : | |
| ROAD READY USED CARS, INC., et al, | : | APRIL 23, 2018 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS AND PETITION TO COMPEL ARBITRATION (DOC. NO. 15) & MOTION FOR MORE DEFINITE STATEMENT (DOC. NO. 32)**

**I.  INTRODUCTION**

Plaintiff Bianca Farrell ("Farrell") brings this action against Road Ready Used Cars, Inc. ("Road Ready"); Ronald Saracino ("Saracino"), the president of Road Ready; and Seasons Federal Credit Union ("Seasons") for alleged violations of the Truth in Lending Act ("TILA"), the Connecticut Unfair Trade Practices Act ("CTUPA"), the Connecticut Creditor's Collection Practices Act ("CCPA"), statutory theft, misrepresentation, conversion, unjust enrichment, breach of warranty, breach of contract, and breach of the duty of good faith and fair dealing.  See Compl. at ¶ 1.

Road Ready and Saracino ("the Road Ready defendants") have moved to dismiss the Complaint pursuant to Federal Rule 12(b)(6) and to compel arbitration of all claims asserted against the Road Ready defendants pursuant to sections four and six of title nine of the United States Code.  (Doc. No. 15).  Seasons has moved for a more definite or separate statement of Farrell's claims against Seasons.  (Doc. No. 32).  For the reasons that follow, the Road Ready defendant's Motion to Dismiss and Petition to Compel Arbitration is granted in part and denied in part and Season's Motion for a More Definite Statement is denied.

1

## II. FACTUAL BACKGROUND

On October 16, 2017, Farrell attempted to purchase a used 2013 Honda Accord ("the vehicle") from Road Ready pursuant to a Purchase Order, Invoice, and Retail Installment Contract, for a retail price of $12,990 plus taxes. See Compl. at ¶ 7. Despite denying Farrell credit, Road Ready accepted $6,500 from Farrell and sold the Retail Installment Contract to Seasons. See id. at ¶¶ 8–10. Seasons then opened a loan account for Farrell even though she had not appeared at Seasons or requested an account. See id. at ¶ 11.

Farrell alleges that the itemization of the amount financed was false, resulting in a false annual percentage rate. See id. at ¶ 13. First, the purchase price included $199 for VIN Etch even though Road Ready's cost was minimal or non-existent for the product. See id. at ¶ 14. Second, the purchase price included a tire warranty for $499, but Road Ready had not paid for or placed the coverage as of December 1, 2017. See id. at ¶ 15. Road Ready had represented that the tire warranty was free and nonnegotiable. See id. at ¶ 18. In addition, the tire warranty falsely identified the lienholder as Wells Fargo and was void because it did not contain any checked boxes that showed which coverage was included. See id. at ¶¶ 16–17.

Third, the purchase price included $199 for paint and interior protections, but the paint was defective and Road Ready did not provide a contract showing coverage for the protection. See id. at ¶ 19. Fourth, the purchase price included $595 for rust proofing and undercoating, even though Road Ready did not rust proof or undercoat the vehicle. See id. at ¶ 20. Fifth, the purchase price included a Service Contract for $2,495, but Road Ready had not placed or paid for the coverage as of December 1, 2017, the Service Contract falsely identified the lienhold as Wells Fargo and disclosed

the purchase price as $2,995, and the contract was void because no boxes were checked to show which coverage was included.  See id. at ¶¶ 21–23.  Sixth, the purchase price included $498 for a Dealer Conveyance Fee even though, as an electronic conveyance, the cost to Road Ready was minimal and the fee far exceeded Road Ready's reasonable costs for processing documentation and performing services related to the closing of the sale.  See id. at ¶¶ 24–25.  Finally, the vehicle was subject to an open recall at the time of the sale, and the vehicle had undisclosed front end damage.  See id. at ¶¶ 26–27.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief" (alteration in original)).  The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the principle that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

3

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

    B.    Rules 12(e) and 10(b)

Federal Rule 12(e) of Civil Procedure provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

"However, such a motion should not be granted if the complaint complies with the 'short and plain statement' requirement of Federal Rule of Civil Procedure 8 because the aim of Rule 12(e) is to remedy unintelligible pleadings, not to correct for lack of detail." Ming Li v. Colonial BT, LLC, No. 3:14-CV-999 (CSH), 2015 WL 5684060, at *2 (D. Conn. Sept. 28, 2015) (internal citations and quotation marks omitted). Motions for a more definite statement are "generally disfavored" and "not intended as a substitute for the normal pleading process." Id.

Federal Rule of Civil Procedure 10(b) states in pertinent part: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

## IV. DISCUSSION

    A.    Arbitrability

In deciding whether a dispute is arbitrable, a court must look at "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claim at issue." Hollick v. Cellular Sales of New York, LLC, 802 F.3d

391, 394 (2d Cir. 2015) (quoting Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005)). Although there is a strong federal policy in favor of arbitration, "arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit." Id. at 395 (quoting JLM Indus. v. Stolt Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (alteration in original)). Courts analyze the factual allegations made in a complaint in order to determine whether claims fall within the scope of an arbitration clause. See id. "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." Id. (quoting Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, 198 F.3d 88, 99 (2d Cir. 1999)).

  The Road Ready defendants argue that Farrell is bound to arbitrate her claims in accordance with the arbitration provision in the Purchase Order. See Mem. of Law in Supp. of Mot. to Dismiss and Pet. to Compel Arbitration ("Defs.' Mem.") (Doc. No. 16) at 11. Farrell argues that, under the "single document rule" codified by Conn. Gen. Stat. section 36a-771(a), once the Retail Installment Contract was signed by both parties, the Purchase Order was no longer effective and the Retail Installment Contract became the only operative document. See Mem. Opposing Mot. to Dismiss in Favor of Arbitration ("Pl.'s Mem.") (Doc. No. 19) at 2. Farrell also argues that disputes arising from the Retail Installment Contract are not subject to arbitration because the arbitration provision in that document was not signed and, due to a merger clause in the Retail Installment Contract, the arbitration provision from the Purchase Order does not carry over to the Retail Installment Contract. See id. at 2.

In a paragraph on the front of the Purchase Order slightly above Farrell's signature, the Purchase Order provides:

> I have read the terms and conditions on the back hereof and agree to them as part of this order the same as if they were printed above my signature. The front and back hereof comprise the entire agreement affecting this order and no other agreement or understanding of any nature concerning same has been made or entered into. I hereby acknowledge receipt of a copy of this order, and certify that I am of legal age.

Def.'s Mem., Ex. A, at 1. The back of the Purchase Order contains the following:

> **I agree this order is subject to the following terms:**
>
> \*\*\*
>
> 9. Arbitration. All disputes, claims or controversies arising from or relating to this Purchase Order or Sale, or the validity of this arbitration clause, shall be resolved by neutral binding arbitration as described in this Section. This arbitration agreement shall be governed by Connecticut law. Judgment upon the award rendered may be entered in any court having jurisdiction. THE PARTIES AGREE AND UNDERSTAND THAT THEY ARE CHOOSING ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT ALTHOUGH THEY HAVE A RIGHT TO LITIGATE DISPUTES THROUGH A COURT, THEY HEREBY WAIVE THAT RIGHT AND AGREE INSTEAD TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION AS DESCRIBED IN THIS SECTION 9. THIS MEANS THAT YOU ARE VOLUNTARILY AND KNOWINGLY GIVING UP ANY RIGHT TO SETTLE SUCH CLAIMS IN COURT AND HAVE A JUDGE OR JURY DECIDE YOUR CASE.

Id. at 2.

A box in the Retail Installment Contract, entitled Agreement to Arbitrate, states: "By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral binding arbitration and not by a court action." Pl.'s Mem., Retail Installment Contract, at 4. The box was not signed.

Whether an arbitration provision in a purchase order is enforceable when an accompanying retail installment contract does not contain an arbitration provision depends on the basis for a plaintiff's claims.  Compare Larkin v. New Century Auto Sales Inc., No. 12-13917, 2014 WL 29119, at *1, *7 (E.D. Mich. Jan. 3, 2014) (finding that plaintiff's claims regarding defendant's failure to disclose finance charges were governed by the terms of the retail installment contract) with Pack v. Damon Corp., 320 F. Supp. 2d 545, 554 (E.D. Mich. 2004) (finding that the purchase order controlled when the plaintiff only sued for breach of warranty and did not challenge the terms of the retail installment contract), rev'd on other grounds, 434 F.3d 810 (6th Cir. 2006).  Because many of Farrell's claims against Road Ready are based on allegedly wrongful charges for warranties and services contained in the Purchase Order, the court concludes that the arbitration provision in the Purchase Order governs disputes over those charges.

Farrell argues that, under the "single document rule," the Retail Installment Contract was the only operative document and therefore her claims must arise under that contract.  See Pl.'s Mem. at 2.  A "single document rule" requires that all of the agreements of the parties must be contained in a single instrument and suspends the common law contract principle permitting the construction of multiple documents together as part of a single transaction.  See Ford v. Antwerpen Motorcars Ltd., 443 Md. 470, 479 (2015).  Farrell argues that the "single document rule" is codified by Conn. Gen. Stat. section 36a-771(a), which states that: "Every retail installment contract shall be in writing, shall contain all the agreements of the parties and shall be completed as to all essential provisions prior to the signing of the contract by the retail buyer."

Farrell has cited no authority for the proposition that Connecticut law institutes a "single document rule"[1] and that, once a retail installment contract is signed by both parties, a purchase order is no longer effective. See Pl.'s Mem. at 2. Rather, there is authority in Connecticut to the contrary. See A-1 Auto Service, Inc. v. Horkavy, No. CV 960392187, 2001 WL 686821, at *3 (Conn. Super. Ct. May 24, 2001) (finding that both the purchase order and the installment contract were valid and binding on the parties). In addition, faced with statutes identical to the Connecticut statute at issue in this case, the highest courts of Maryland and Minnesota found that their own statutes did not prevent the purchase order and the retail installment contract from both remaining operative. See Ford v. Antwerpen Motorcars Ltd., 443 Md. 470, 480 (2015) (rejecting plaintiff's argument that a Maryland statute requiring that "[a] vehicle sales contract or agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties" constituted a "single document rule" that precluded consideration of the buyer's order alongside the retail installment contract); Scott v. Forest Lake Chrysler-Plymouth-Dodge, 611 N.W.2d 346, 352 (Minn. 2000) (rejecting argument that purchase contract was subsumed into the retail installment contract).

Farrell also argues that, through the merger clause in the Retail Installment Contract, the unsigned arbitration provision in that contract displaced the arbitration provision in the Purchase Order. See Pl.'s Mem. at 2. The merger provision in the Retail Installment Contract states: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and

---

[1] The court agrees that the terms of a Retail Installment Contract must be contained in one document. See Conn. Gen. Stat. section 36a-771.

8

we must sign it. No oral changes are binding." See Pl.'s Mem., Retail Installment Contract at 2. Interpreting a merger clause with language similar to that of the Retail Installment Contract, the Second Circuit held that, rather than void or supersede prior agreements, "a merger clause acts only to require full application of the parol evidence rule to the writing in question." Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005) (emphasis added), abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 286 (2010). The merger clause in the instant case is more limited than the merger clause at issue in Bank Julius. Whereas the merger clause in Bank Julius stated "[t]his Agreement supersedes all prior agreements and understandings between [Waxfield] and the Bank. It constitutes the entire agreement of the parties," Bank Julius Baer & Co., 424 F.3d at 283, the merger clause in the Retail Installment Contract applied only to "this contract." Therefore, the court concludes that the merger clause merely implemented the parol evidence rule for the Retail Installment Contract; it did not void the Purchase Order, which was a separate contract.

Farrell argues that the failure of the parties to sign the arbitration clause in the Retail Installment Contract (the second signed document) overrides the arbitration clause in the Purchase Order. In support, she cites Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522 (2d Cir. 2011), where the Second Circuit found that an adjudication provision in the second of two agreements superseded an arbitration provision in the first agreement through the operation of a merger clause. See id. at 525–26. The court held that "contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration." Id. at 525. However, the Retail Installment Contract in the instant case

9

does not "plainly preclude arbitration." While the second agreement in <u>Applied Energetics</u> included a provision that mandated the adjudication of disputes between the parties in specified courts, <u>see id.</u> at 523, the Retail Installment Contract contains only an unsigned arbitration box, <u>see</u> Pl.'s Mem., Retail Installment Contract at 2.

The court in <u>Applied Energetics</u> also based its interpretation of the merger clause at issue on the New York state common law principle that "a subsequent contract regarding the same subject matter will supersede the prior contract." <u>Applied Energetics</u>, 645 F.3d at 526 (quoting <u>Barnum v. Millbrook Care Ltd. P'ship</u>, 850 F. Supp. 1227, 1236 (S.D.N.Y. 1994). Unlike the contracts in <u>Applied Energetics</u>—a preliminary agreement and a subsequent formal agreement concerning the same subject matter— the Purchase Order and the Retail Installment Contract concern different subject matters: the items being purchased and the terms for financing that purchase, respectively. The Purchase Order stated that, "IF YOU AGREE TO ASSIST ME IN OBTAINING FINANCING FOR ANY PART OF THE PURCHASE PRICE, THIS ORDER SHALL NOT BE BINDING UPON YOU OR ME UNTIL ALL THE CREDIT TERMS ARE PRESENTED TO ME IN ACCORDANCE WITH REGULATION "Z" (TRUTH-IN-LENDING) AND ARE ACCEPTED BY ME." <u>See</u> Def.'s Mem., Ex. A at 1. That the effectiveness of the Purchase Order was contingent upon the execution of a security agreement should the parties agree to finance the sale demonstrates that the two contracts represented separate steps toward Farrell's acquisition of the vehicle.

Moreover, if Farrell's interpretation of the merger clause was correct and the Retail Installment Contract was the only operative agreement, the operation of the parol evidence rule would appear to prevent Farrell from using the Purchase Order to prove

10

many of her claims.  In her Complaint, Farrell alleges that the purchase price included fees for services she never received, including VIN Etch, a tire warranty, and rust proofing and undercoating.  See Compl. at ¶¶ 14, 15, 20.  While the Purchase Order enumerates the items in the purchase price, see Defs.' Mem., Ex. A (Doc. No. 16-1) at 1, the Retail Installment does not reflect the fees Farrell paid for the allegedly undelivered services, Pl.'s Mem., Retail Installment Contract at 2, 4.  The inequitable consequence of interpreting the merger clause in the Retail Installment Contract to void the Purchase Order lends support to the Road Ready defendants' more limited reading of the scope of the merger provision.  See Bank Julius Baer & Co., 424 F.3d at 283 (noting that reading a merger clause as expunging earlier agreements on which the agreement containing the merger clause relied would be an absurd result in violation of canons of construction); Welch v. Stonybrook Gardens Cooperative, Inc., 158 Conn. App. 185, 198–99 (2015) (citing Waesche v. Redevelopment Agency, 155 Conn. 44, 51 (1967)) (construing contractual language to avoid an "unworkable or absurd result").

Farrell also cites Lowe v. Nissan of Brandon, Inc., No. 2D17-1104, 2018 WL 300892 (Fla. 2d DCA Jan. 5, 2018), where a Florida appellate court discussed two decisions of another Florida appellate court which found that merger clauses in retail installment contracts that did not contain arbitration agreements nullified arbitration provisions in purchase agreements.  See id. at *3–*4 (citing HHH Motors, LLP v. Holt, 152 So.3d 745 (Fla. 1st DCA 2014); Duval Motors Co. v. Rogers, 73 So.3d 261 (1st DCA 2011)).  First, taking the two Florida cases as soundly decided, this court is bound by Second Circuit precedent interpreting merger provisions.  See, supra, 8–9.  Second, the facts in Lowe are more similar to the instant case than those in HHH and Duval.

11

Like the purchase agreement in Lowe, the Purchase Order in the instant case contained a merger provision itself, see Def.'s Mem., Ex. A, at 1, as well as a provision stating that, should the parties agree to finance the purchase price, the Purchase Order would not be binding until the finalization of the credit terms. See id. These terms indicates that the parties intended for the Purchase Agreement to remain in effect after any agreement to finance the sale.

Given the similarities between the factual allegations underlying Farrell and Lowe's claims, this court finds the following passage from Lowe instructive:

> Ms. Lowe specifically challenges part of the sale price of the vehicle. Regardless of whether she financed the purchase or paid cash, the Fee she is challenging remains the same. And while Ms. Lowe claims that the fee was incorporated into the sale price of the vehicle as listed in the Installment Contract, without the Purchase Agreement she cannot establish the necessary facts to proceed on her claims. But see HHH Motors, 152 So. 3d at 748–49. The Purchase Agreement contains the essential terms of the contract for the FDUTPA claim Ms. Lowe raises.

See Lowe, 2018 WL 300892, at *6. Similarly, in the instant case, Farrell's claims are based, at least in part, on allegedly wrongful charges contained in the Purchase Order.

Finally, Farrell cites Bevel v. Marine Grp., LLC., 231 So.3d 1074 (Ala. 2017), where the Supreme Court of Alabama denied a motion to compel arbitration because the plaintiff did not check the box providing for arbitration of disputes. See Notice of Supp. Authority ("Notice") (Doc. No. 39) at 1 (citing Bevel, 231 So.3d at 1079). However, the Road Ready defendants have already conceded that disputes relating to the Retail Installment Contract are not arbitrable. See Reply to Mem. in Opp'n to Mot. to Dismiss and Petition to Compel Arbitration ("Reply") (Doc. No. 21) at 3. The lack of an arbitration provision in the Retail Installment Contract does not address the Road

12

Ready defendants' argument that Farrell's claims are subject to the arbitration provision in the Purchase Order.

Farrell's claims against Road Ready arising out of the Purchase Order are subject to the Purchase Order's arbitration clause. Therefore, the court concludes that Farrell must arbitrate her claims against the Road Ready defendants. See Katz v. Cellco P'Ship, 794 F.3d 341, 347 (2d Cir. 2015); see also 9 U.S.C. § 3.

Given the significant overlap between the claims against the Road Ready defendants and the claims against Seasons, a discretionary stay of all proceedings in this action pending arbitration is warranted. See Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 110–11 (S.D.N.Y. 2017). While the court expects arbitration to proceed expeditiously, Farrell may seek an order vacating this stay and order compelling arbitration should defendants delay resolution by arbitration. See Alghanim v. Alghanim, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011).

B.      Motion for More Definite Statement

Seasons argues that, because Farrell has pled all of the facts in one count, Seasons cannot discern which allegations are pled against Seasons as opposed to the other defendants and which facts allegedly support any given cause of action. See Def.'s Mot. for a More Definite Statement/Separate Statement ("Def.'s Mot.") (Doc. No. 32) at 3. Farrell responds that the Complaint is not so vague or ambiguous that Seasons cannot meaningfully respond. See Mem. Opposing Mot. for More Definite Statement ("Pl.'s Mem.") (Doc. No. 33) at 3.

The court concludes that Farrell's pleadings should be intelligible to Seasons and do not prejudice Seasons' ability to prepare an adequate defense. Seasons cites two

cases in which courts granted motions for a more definite statement or separate claims, but the complaints in both cases warranted clarification for reasons that are not present in the instant case. In Ming Li v. Colonial BT, LLC, No. 3:14-CV-999 (CSH), 2015 WL 5684060 (D. Conn. Sept. 28, 2015), the court granted the defendant's motion for a more definite statement because the plaintiffs had combined their nuisance claims in one count such that the pleading obfuscated whether the claim was for private or public nuisance and thereby prevented the defendant from meaningfully responding. Id. at *3–*4. In Sec. & Exch. Comm'n v. Hamilton, No. 3:16-CV-192 (AWT), 2017 WL 5252480 (D. Conn. Feb. 1, 2017), the court ordered the plaintiff to separate its claims into different counts because each claim of insider trading was based on a separate transaction. Id. at *1.

In contrast, the Complaint in the instant case indicates Farrell's causes of action and is based on a single transaction. Moreover, the parties agree that Seasons is subject to all claims against Road Ready under the Retail Installment Contract. See Joint Report of Rule 26(f) Planning Meeting (Doc. No. 25) at 4. Farrell's Complaint is not so vague or ambiguous that it must be repled.

## V. CONCLUSION

For the foregoing reasons, the Road Ready Defendant's Motion to Dismiss and Petition to Compel Arbitration (Doc. No. 15) is **GRANTED IN PART AND DENIED IN PART** and Seasons's Motion for a More Definite or Separate Statement (Doc. No. 32) is **DENIED**. Farrell is ordered to arbitrate her claims against the Road Ready defendants in the manner provided by the Purchase Order. The clerk is directed to stay the proceeding as to all defendants.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 23rd day of April, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
